Filed 6/6/13  In re C.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.L., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057469 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ120738) |
| v. | OPINION |
| C.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Reversed with directions.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, Anna M. Deckert, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for minor.

1

C.L. (minor, born August 2009) came to the attention of plaintiff and respondent Riverside County Department of Public Social Services (the department) on December 2, 2010, upon receipt of a report from law enforcement that minor was living with his paternal grandparents, who were suspected of operating a methamphetamine lab. Mother was physically incapacitated and living in an assisted living facility, while father was incarcerated. After sustaining a juvenile dependency petition filed by the department, the juvenile court found the Indian Child Welfare Act (ICWA) applied as mother was a registered member of the Chickasaw Nation, in which minor would also be eligible for membership. Father reported Indian heritage as well.

On February 7, 2011, the juvenile court removed minor from parents' custody and ordered parents' receive six months of reunification services. On August 8, 2011, the juvenile court terminated parents' reunification services. The department initially placed minor with caregivers through Indian Child and Family Services; however, those caregivers requested minor be removed; the department subsequently placed minor with non-Indian foster parents on May 2, 2011. After the Chickasaw Nation intervened and could not find a placement for minor, it approved termination of parents' parental rights and adoption by minor's foster care parents. On September 7, 2012, the juvenile court terminated parents' parental rights and ordered adoption as the permanent plan.

On appeal, father contends the juvenile court erroneously terminated his parental rights without complying with ICWA with respect to his own purported Indian heritage.[1]

---

[1] Mother is not a party to the appeal.

We agree the department failed to comply with ICWA notification with regard to father's purported Indian heritage and, therefore, conditionally reverse the juvenile court's order terminating father's parental rights.

## FACTUAL AND PROCEDURAL HISTORY

On December 2, 2010, law enforcement investigated a report that paternal grandparents were operating a methamphetamine lab at their residence.[2] They had responded to the home six times in the preceding two months, during which they had conducted arrests. An officer opened the front door of the home and found minor standing next to two pitbulls without adult supervision. Minor informed the officer everyone was sleeping. The officer found paternal grandmother asleep in a back bedroom. Paternal grandfather was talking with someone outside the home. The officer found a drug pipe and controlled substances on paternal grandfather's person; paternal grandparents were both arrested for possession of illegal substances, possession of stolen property, and passing bad checks.

Minor had been living with paternal grandparents his entire life. At the time of his delivery, he tested positive for opiates. Mother tested positively for opiates and marijuana prior to delivery. On January 9, 2010, mother had been involved in an automobile accident, which left her "non-mobile, non-verbal, and currently quadriplegic and unaware of her surroundings." She was reportedly in a "vegetative" state and placed

---

[2] The juvenile court had declared father a dependent of the court between August 3, 1998, and September 21, 2000, due to paternal grandmother's operation of a clandestine laboratory in the home.

in an assisted living facility, which was required in order to meet her daily needs. Father was incarcerated and would not be released until May 1, 2011.

The department filed a Welfare and Institutions Code section 300[3] petition alleging father had left minor in the care of paternal grandparents despite knowing of their criminal history and the inappropriateness of the residence (B-1), mother was unable to provide care (B-2, G-1), and father was incarcerated (B-3, G-2). Maternal grandfather reported maternal grandmother was Native American. On December 7, 2010, father filed an ICWA-020 form indicating he may have Indian ancestry notating only "PGM." At the detention hearing, father's attorney noted, "We have submitted an ICWA-20, and I believe he's indicating that he may have Indian ancestry also. It would be on his father's side, and he's not sure of the tribe, your Honor." Mother was a registered member of Chickasaw Nation.

The juvenile court found, "there is reason to know that an Indian child is involved on possibly both the maternal and paternal side[s] of the family. We don't know the tribe however. At this time, at least [the department] must provide notice to any identified tribes and if any are identified later and/or the Bureau of Indian Affairs as required by law." Thus, the court found ICWA may apply. It found minor had been placed in an Indian home pursuant to section 361.31, appointed a guardian ad litem for mother, and ordered minor detained.

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

In the jurisdiction and disposition report dated December 30, 2010, the social worker noted she had spoken with a representative of Chickasaw Nation who confirmed mother was a registered member and that minor would be eligible for membership as well. The department requested a continuance for the preparation of an Indian expert declaration. On January 4, 2011, the department mailed notice of child custody proceeding for an Indian child. The social worker noted mother's tribe as Chickasaw Nation and mailed the notice accordingly. Father's tribe was listed as "not specified" and mailed to the Bureau of Indian Affairs.

An addendum report filed February 2, 2011, reflected the department's receipt of a letter from Chickasaw Nation confirming mother's membership and minor's status as an Indian child pursuant to ICWA. An Indian expert averred via declaration, "There is no evidence that the father is a Native American Person." He recommended removal of minor's custody from parents. After sustaining the petition, the juvenile court found an Indian child was involved and that the department "has provided notice to all identified tribes as required by law."

In a status review report filed July 26, 2011, the social worker noted minor's Indian family placement had requested minor be removed on May 2, 2011. The department placed minor in non-Indian foster care. At the six-month review hearing on August 8, 2011, the juvenile court found good cause existed to deviate from ICWA regarding placement since the Indian family had requested minor's removal, and no other Indian family could be found. The juvenile court terminated parents' reunification services and set the section 366.26 hearing.

5

On November 10, 2011, Chickasaw Nation filed a motion to intervene in the proceedings.[4] In subsequent reports filed November 17, 2011, and March 27, 2012, the department requested continuances of the section 366.26 hearing to allow Chickasaw Nation to intervene; as of the latter report, Chickasaw Nation had not determined whether an adoptive placement within its tribe could be located. In an addendum report filed July 20, 2012, the social worker noted Chickasaw Nation had given its approval to proceed with adoption by the prospective adoptive parents with whom minor had been placed on May 2, 2011. On September 7, 2012, the juvenile court terminated parental rights and ordered adoption as the permanent plan.

**DISCUSSION**

Father contends the juvenile court erroneously terminated his parental rights without complying with the notification requirements of ICWA with respect to his alleged Indian heritage. We agree.

The ICWA was enacted "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." (25 U.S.C.A. § 1902.) "The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations . . . ." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.) To this end, section 1911 of the ICWA allows a tribe to intervene in state court dependency proceedings. (25 U.S.C.A. § 1911(c).)

---

[4] The record does not disclose whether the juvenile court formally ruled on the motion, but subsequent circumstances indicate it implicitly granted the request.

6

Notice of the proceedings is required to be sent whenever it is known or there is reason to know that an Indian child is involved. (25 U.S.C.A. § 1912(a); Welf. & Inst. Code, § 224.2, subd. (a); see *In re Desiree F.*, *supra*, 83 Cal.App.4th at p. 469.) Notice serves a twofold purpose: "(1) it enables the tribe to investigate and determine whether the minor is an Indian child; and (2) it advises the tribe of the pending proceedings and its right to intervene or assume tribal jurisdiction." (*In re Desiree F.*, *supra*, at p. 470.) No foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe (or the Bureau of Indian Affairs where the tribe is unknown) receives notice. (25 U.S.C.A. § 1912(a); *In re A.B.* (2008) 164 Cal.App.4th 832, 838.)

In addition to the minor's name, and date and place of birth, if known, the notice is required to include the "name of the Indian tribe in which the child is a member or may be eligible for membership, if known." (§ 224.2, subd. (a)(5)(B).) The notice is also required to contain "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, . . . as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(C).)

Juvenile courts and child protective agencies have "'an affirmative and continuing duty to inquire whether a [dependent] child . . . is or may be an Indian child.' [Citation.]" (*In re H.B.* (2008) 161 Cal.App.4th 115, 121; § 224.3; Cal. Rules of Court, rule 5.481.) As soon as practicable, the social worker is required to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or

7

eligibility.  (§ 224.3, subd. (c); *In re Shane G.* (2008) 166 Cal.App.4th 1532, 1539; Cal. Rules of Court, rule 5.481(a)(4).)

"'The [trial] court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.  [Citation].  We review the trial court's findings for substantial evidence.  [Citation.]'  [Citation.]" (*In re Christian P.* (2012) 207 Cal.App.4th 1266, 451.)

Here, substantial evidence fails to support the juvenile court's determination that the department had given proper notice regarding father's claim of Indian heritage. Father filed an ICWA-020 form indicating he may have Indian ancestry stemming, presumably, from the paternal grandmother.[5]  Father's counsel also notified the court at the detention hearing that father had Indian heritage of unknown origin through his paternal side.[6]  The juvenile court explicitly noted there was reason to believe minor had Indian heritage on both sides of his family and the department had the responsibility to "provide notice to any identified tribes and if any are identified later and/or the Bureau of Indian Affairs as required by law."

---

[5]  The department contends father's notation of "PGM" on his ICWA-020 form means his own paternal grandmother, rather than minor's.  Either way, the department had an obligation to inquire into any of father's purported Indian heritage and provide as much information as it could reasonably obtain to any identified tribe or the Bureau of Indian Affairs.

[6]  If "PGM" in father's ICWA-020 meant father's paternal grandmother, than his counsel's statement that he claimed Indian heritage through his father's side would be consistent.  If father meant minor's paternal grandmother, counsel's statement would be inconsistent.  Nevertheless, the department had the obligation, and opportunity, to further inquire.

This it did not do. With respect to father, the notice of child custody proceeding for an Indian child listed paternal grandmother's current address as only "California." It listed her former address as "unknown." Although it listed her birth date, it listed her birth place as "unknown." Likewise, the notice listed paternal grandfather's current address as only "California" and his former address as "[no] information available." The notice reflected paternal grandfather's birth date, but listed his place of birth as "Unknown possibly Los Angeles, CA." The notice did not give any information regarding more removed relations of consanguinity on either side of father's family.

The lack of current or former addresses in the notice for paternal grandparents is particularly glaring as the department responded to their address in taking protective custody of minor which, at minimum, would reflect their former, if not, current address. Moreover, the social worker interviewed paternal grandparents on December 27, 2010, nearly three weeks after father had filed his ICWA-020 form indicating Indian heritage, his counsel's statement father had Indian ancestry, and the juvenile court's order that the department provide proper notification regarding both sides of minor's family. Thus, the department had ample opportunity to inquire of paternal grandparents regarding their current and former addresses, their places of birth, any tribal affiliations, and any information regarding their parents and grandparents that would be pertinent to the ICWA notification.

Indeed, even after the department issued its ICWA notice, it continued to have contact and information regarding paternal grandmother's location. The department's report filed July 26, 2011, reflects paternal grandmother engaged in weekly visits with

9

father and minor at the department's offices ending on May 11, 2011. A report filed November 17, 2011, reflected the department knew paternal grandmother was in a federal penitentiary. Thus, even if the department could be excused in providing an initially inadequate ICWA notice, it failed its continuing duty to make the requisite inquires and subsequent notice.

Contrary to the department's contention, we cannot hold the error harmless because there is no information that father did not have Indian heritage. If he did, and was eligible for membership, minor may have qualified as an Indian child via a different tribe, which could have intervened and potentially found an Indian family placement for him, unlike Chickasaw Nation. Thus, the department failed to provide adequate notice pursuant to ICWA requiring conditional reversal. (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1168; *In re A.G.* (2012) 204 Cal.App.4th 1390, 1393-1394.)

**DISPOSITION**

The orders terminating parental rights and ordering adoption as the permanent plan for minor are conditionally reversed and a limited remand is ordered as follows: Upon remand, the juvenile court shall direct the department to make further inquiries regarding minor's paternal Indian ancestry, if any, pursuant to section 224.1 and send ICWA notices to all relevant tribes and the BIA in accordance with ICWA and California law. The department shall thereafter file certified mail, return receipts, for the ICWA notices, together with any responses received. If no responses are received, the department shall so inform the juvenile court. The juvenile court shall determine whether the ICWA notices and the duty of inquiry requirements have been satisfied and whether

10

minor is an Indian child on his paternal side.  If the juvenile court finds minor is not an Indian child on his paternal side, it shall reinstate the orders terminating parental rights and placing minor for adoption.  If the court finds minor is an Indian child on his paternal side, it shall conduct all further proceedings in compliance with the ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RICHLI
Acting P. J.

KING
J.

11